**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 17-24047-CIV-UNGARO**

**MIAMI WORKERS CENTER, et al.,**

       **Plaintiffs,**

**vs.**

**MIKE CARROLL, et al.,**

       **Defendants.**

_____/

**FEDERAL DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED**
**CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Defendants, Sonny Perdue and United States Department of Agriculture (USDA and, collectively, the Federal Defendants), by and through the undersigned Assistant United States Attorney, move to dismiss the Second Amended Class Action Complaint for Declaratory and Injunctive Relief [D.E. 62] (the Complaint) for failure to state a claim pursuant to Rule 12(b)(6); and, in support thereof, state the following.

**I.      Introduction: Plaintiffs Fail to State a Claim.**

In the Complaint, Plaintiffs—two organizational Plaintiffs, Miami Workers Center and New Florida Majority, and two individually named Plaintiffs, Charilus Federick and Shiana Barbosa (collectively Plaintiffs)—sue the State of Florida, naming Mike Carroll in his official capacity as Secretary of Florida's Department of Children and Families (DCF), and the Federal Defendants alleging, in relevant part, that the Disaster Supplemental Nutrition Assistance Program (D-SNAP), which was requested and administered by DCF, was conducted in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.   The Complaint includes four enumerated "Claims for Relief" or counts, two asserted against the Federal Defendants and two

against DCF.  This Motion to Dismiss addresses only the allegations and counts asserted against the Federal Defendants.

In count one, Plaintiffs seek to assert a claim directly under the Rehabilitation Act against the Federal Defendants as the federal agency that funded a program or activity (DCF's D-SNAP) that the Plaintiffs allege violates the Rehabilitation Act.  There, however, is no express or implied cause of action under the Rehabilitation Act against a federal agency funding a program or activity for alleged violations of the Rehabilitation Act.  Plaintiffs do not (and cannot) state a claim against the Federal Defendants under the Rehabilitation Act.

In the second count naming the Federal Defendants (the fourth count in the Complaint), Plaintiffs seek to pursue a claim under the Administrative Procedure Act, 5 U.S.C. § 701 et seq. (APA).  This count, impermissibly, appears to be pursuing two independent APA claims;[1] regardless, both fail to state a claim.  First, Plaintiffs allege that the Federal Defendants violated the Rehabilitation Act, and, therein, the APA, when they approved DCF's D-SNAP plan.  This APA claim is precluded, as there is an adequate remedy available under Plaintiffs' direct suit against DCF and as Plaintiffs' Complaint, otherwise, fails to state a claim.  Second, Plaintiffs allege that the Federal Defendants unlawfully withheld agency action in violation of 5 U.S.C. § 706(1).  Plaintiffs, however, fail to identify a discrete agency action, which the Federal Defendants were required to take, that was allegedly withheld.  This pleading deficiency requires

---

[1] As explained in Federal Defendants' Motion to Dismiss or in the Alternative for More Definite Statement [D.E. 59], this is a pleading violation.  While the Complaint could be dismissed on this basis, the Federal Defendant proceed to challenge Plaintiffs' claims as pleaded as they are unable to state a claim regardless and have been unable to cure their pleading deficiencies after multiple attempts.

dismissal of Plaintiffs' § 706(1) APA claim.  Plaintiffs fail to state a claim against the Federal Defendants in this case.  The Federal Defendants should be dismissed.[2]

## II.      Background: How D-SNAP Works and the History of DCF's D-SNAP.

Under the Food and Nutrition Act of 2008, the Federal Government funds, and States administer, a Supplemental Nutrition Assistance Program (SNAP).  7 U.S.C. §§ 2011- 2036a.  States and localities are wholly responsible for administering and supervising the program within the state.  7 C.F.R. § 271.4; Complaint ¶¶32-34.  SNAP provides benefits to qualified households so that the households may purchase food items at authorized retail food stores.  7 U.S.C. § 2013.  SNAP is an on-going benefits program, and it has a wide-range of requirements to protect program integrity.  See 7 C.F.R. Parts 271-285.

In contrast to SNAP, D-SNAP provides temporary assistance to households affected by a natural disaster, in the form of a one-time issuance of benefits to eligible households.  Complaint ¶37.  D-SNAP benefits are authorized by the Robert T. Stafford Disaster Relief and Emergency Assistance Act, which permits USDA to refund States that administer temporary benefit allotments pursuant to the provisions of the Food and Nutrition Act of 2008 to households affected by a natural disaster.  Id. See also 42 U.S.C. § 5179.  D-SNAP assistance is limited "to persons whose income and assets, minus disaster-related expenses, are within federal D-SNAP eligibility criteria."  Complaint ¶39.

D-SNAP is not automatically initiated: States have the affirmative obligation to request that D-SNAP be authorized after a disaster is declared based upon the State's need for D-SNAP and ability to operate D-SNAP while maintaining program integrity.  See, e.g., Toney-Dick v.

---

[2] As Plaintiffs have had three opportunities to state a claim against the Federal Defendants and have failed, further amendment would be futile.  Dismissal should be with prejudice.

Doar, No. 12 Civ. 9162(KBF), 2013 WL 6057949, at *2 (S..D.N.Y. Nov. 14, 2013).   See generally 7 C.F.R. § 280.1.  In order to request D-SNAP, a state must submit a waiver request: the request is a "waiver" as it allows for D-SNAP benefits expeditiously by waiving program integrity protections required for regular SNAP.  USDA reviews States' D-SNAP waiver requests to determine whether the program will receive federal funding. 7 U.S.C. §§ 2014(h), 2025(a); 42 U.S.C. § 5179.  While USDA supports States' efforts through policy guidance, training, and technical assistance, the agency's role is advisory: States are responsible for administering D-SNAP and have wide latitude in formulating and implementing D-SNAP plans. 7 U.S.C. 2020(e)(14).

In the aftermath of Hurricane Irma, President Trump, at the request of Governor Scott, declared 37 counties in Florida major disaster areas.  Id. ¶42. Thereafter, DCF submitted a waiver request for authorization to administer a D-SNAP.  Id. ¶43.  DCF's final D-SNAP waiver included two forms of accommodations for people with disabilities: accommodations were available at the D-SNAP locations for disabled persons who could appear in-person and, for those who could not personally appear, DCF allowed disabled persons to authorize a personal representative to apply for them.  Id. ¶¶45-46.  USDA approved DCF's final D-SNAP waiver request only after DCF added these reasonable accommodations.  Id. ¶47.  In approving DCF's D-SNAP, USDA reinforced the following requirements: "a) DCF is able to provide human comforts such as water and restroom facilities; b) DCF will make reasonable accommodations for the elderly [and] disabled; c) DCF will provide sufficient staff to provide D-SNAP applications; and d) DCF has the flexibility to augment staffing at each FFF site as needed."  Id. "As a term of approval, USDA further required DCF to: [C]losely monitor D-SNAP . . . sites, continue to assess the volume of potential applicants, and adjust D-SNAP sites, accommodations

for human needs, staff and resources, and security as needed. . . [and] use temporary staff employees [as well] as request additional staffing support from 'Buddy State' SNAP agencies." Id. ¶49.

On November 3, 2017, DCF submitted a modification request to USDA seeking "to provide additional accommodations for the elderly and disabled populations." Id. ¶¶4, 53. USDA granted DCF's modification request for additional accommodations. Id. There is no allegation that USDA denied a request for modification submitted by DCF to provide further accommodations.

## III.   Analysis

### A. There is No Express or Implied Cause of Action Under the Rehabilitation Act in This Case.

In count one, Plaintiffs bring a cause of action against the Federal Defendants under Section 504 of the Rehabilitation Act.  There, however, is no applicable express cause of action under the Rehabilitation Act against a federal funding agency nor is there any congressional intent to imply one.  Accordingly, Plaintiffs cannot state a claim against the Federal Defendants.

As the Eleventh Circuit recently repeated, "[i]t is well established that the mere 'fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person.'"  Alabama v. PCI Gaming Authority, 801 F.3d 1278, 1293-94 (11th Cir. 2015) (quoting Cannon v. Univ. of Chicago, 441 U.S. 677, 688 (1979)). "A statute may, but does not necessarily, create a cause of action either expressly or by implication." Id. at 1294.  "The question of the existence of a statutory cause of action is, of course, one of statutory construction." Id. (quoting Touche Ross & Co. v. Redington, 442 U.S. 560, 568 (1979)).  See also Love v. Delta Airlines, 310 F.3d 1347, 1351 (11th Cir. 2002)

(quoting <u>Cannon</u>, 441 U.S. at 688) ("The issue of whether a statute creates by implication a private right of action is a 'question of statutory construction.'").

> [P]rivate rights of action to enforce federal law **must be created by Congress**. The judicial task is to interpret the statute Congress has passed to **determine whether it displays an intent** to create not just a private right but also a private remedy. **Statutory intent** on this latter point **is determinative**. **Without it, a cause of action does not exist and courts may not create one**, no matter how desirable that might be as a policy matter, or how compatible with the statute.

<u>Alexander v. Sandoval</u>, 532 U.S. 275, 286 (2001) (internal citations omitted and emphasis added). "Congressional intent to create a private right of action will not be presumed. There must be clear evidence of Congress's intent to create a cause of action." <u>Love</u>, 310 F.3d at 1353 (quoting <u>McDonald v. Southern Farm Bureau Life Ins. Co.</u>, 291 F.3d 718, 723 (11th Cir. 2002)).

Section 504 of the Rehabilitation Act provides, in relevant part, that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794. In this case, Plaintiffs allege that they were excluded from participating in DCF's D-SNAP. DCF's D-SNAP is a "program or activity receiving Federal financial assistance." 29 U.S.C. 794(b) (defining "program or activity" under the Rehabilitation Act). The Rehabilitation Act, however, does not provide for an express or implied cause of action in this case. As the numerous courts that have had occasion to consider this issue have concluded, neither the Rehabilitation Act, nor Title VI (which the Rehabilitation Act is modeled after), afford private plaintiffs an express or implied cause of action against a federal funding agency in connection with claims that a program or activity receiving federal funds was conducted in a discriminatory

manner. See, e.g., Jersey Heights Neighborhood Ass'n v. Glendening, 174 F.3d 180, 184, 191 (4th Cir. 1999) (concluding that Title VI does not provide a cause of action to sue federal agencies and officials who approved and funded a highway that was proposed by a state agency in an allegedly discriminatory location); Women's Equity Action League v. Cavazos, 906 F.2d 742, 750-51 (D.C. Cir. 1990) (holding that the plaintiffs could not maintain a Title VI action directly against federal defendants charged with monitoring and enforcing funding recipients' compliance with prohibitions on discrimination: "So far as we can tell, the suit targeting specific discriminatory acts of fund recipients is the only court remedy Congress has authorized for private parties."); Marlow v. U.S. Dep't of Educ., 820 F.2d 581, 582-83 (2d Cir. 1987) (concluding that a "statutory basis for review" was "absent" under the Rehabilitation Act where the plaintiff sought to reopen his administrative complaint finding that his handicap prevented him from performing the essential functions of his job); Doar, 2013 WL 6057949 at *6 (concluding that "no explicit cause of action is available as against the federal defendants" in an identical case brought in New York after Superstorm Sandy). Cf. U.S. Dep't of Transp. v. Paralyzed Veterans of Am., 477 U.S. 597, 605-06 (1986) ("By limiting coverage to recipients, Congress imposes the obligations of [the statute] upon those who are in a position to accept or reject those obligations as a part of the decision whether or not to 'receive' federal funds."); Shotz v. City of Plantation, 344 F.3d 1161, 1169 (11th Cir. 2003) ("The Supreme Court has concluded that 'Congress limited the scope of § 504 to those who actually receive federal financial assistance' . . . .") (quoting Paralyzed Veterans, 477 U.S. at 605) (internal alterations omitted).

1.  **While the Rehabilitation Act Provides Two Express Causes of Action, Plaintiffs are Not Pursuing Either: There is No Express Cause of Action Under the Rehabilitation Act in This Case.**

The only "remedies, procedures, and rights" expressly provided for under the Rehabilitation Act for an alleged violation of Section 504 are "[t]he remedies, procedures, and rights set forth in [T]itle VI of the Civil Rights Act . . . ." 29 U.S.C. § 794a(a)(2).[3]  Title VI expressly provides for only two avenues to obtain judicial review of agency actions.  42 U.S.C. § 2000d-2.  First, specifically as to federal funding agencies, Title VI authorizes judicial review of agency action "terminating or refusing to grant or to continue financial assistance upon a finding of failure to comply with any requirement imposed pursuant to section 2000d-1" of Title VI.  Id. This provision enables aggrieved persons—i.e., recipients of federal funding, such as States and their subdivisions and agencies—"to obtain judicial review of an agency decision to terminate or refuse to grant funding."  Marlow, 820 F.2d at 582.  Title VI prescribes that this review (i.e., review of an agency's decision to terminate funding) may be obtained "in accordance with chapter 7 of title 5" (the APA).  42 U.S.C. § 2000d-2.

Plaintiffs clearly are not bringing their purported Rehabilitation Act claim under this express cause of action.  There has been no termination of funding in this case (nor have Plaintiffs sought the same) and, even if there were, Plaintiffs would not be the aggrieved party (the funded entity).  Plaintiffs do not state a cause of action under this first express provision of Title VI, which is incorporated into the Rehabilitation Act.

---

[3] Congress patterned the Rehabilitation Act upon Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq., and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq.; and, thus, courts construe the  Rehabilitation Act with reference to Titles VI and IX (and vice versa).  See, e.g., Paralyzed Veterans, 477 U.S. at 605-06; Alexander, 532 U.S. at 279-80; Cannon, 441 U.S. at 694-695; Shotz, 344 F.3d at 1169-70 (11th Cir. 2003); Marlow, 820 F.2d at 582; Doar, 2013 WL 6057949, *5.

Second, Title VI permits challenges to agency action "taken pursuant to 2000d-1 . . . as may otherwise be provided by law for similar action taken by such . . . agency on other grounds." 42 U.S.C. § 2000d-2.  Accordingly, this second express cause of action is limited to review of action that is "taken pursuant to 2000d-1."  See, e.g., Doar, 2013 WL 6057949 at *6.

Section 2000d-1 provides that federal agencies may "effectuate" the antidiscrimination mandate of Title VI by "issuing rules, regulations, or orders of general applicability" governing federally funded programs and that "compliance with any requirement adopted pursuant to this section may be effected" through the termination of funding.  42 U.S.C. § 2000d-1.  Thus, the second express cause of action against a federal funding agency permissible under Title VI— and, therefore, under the Rehabilitation Act—allows for only narrow challenges to final agency action taken **in issuing rules** to effectuate an antidiscrimination mandate (under Title VI or the Rehabilitation Act respectively) and **in seeking to enforce those rules**.  42 U.S.C. § 2000d-2; see Doar, 2013 WL 6057949 at *6.  Moreover, any such challenge would be limited to, and controlled by, the APA.  Marlow, 820 F.2d at 582-83 (The statute by which federal agency action "similar" to that involved here is made reviewable is the [APA].").

Plaintiffs do not state a claim under the second express cause of action.  Plaintiffs are not challenging the promulgation of any rule, regulation, or order of general applicability issued in an effort to effectuate the Rehabilitation Act nor are they challenging a final agency action seeking to enforce such a rule.  See 7 C.F.R. Pt. 15b (regulations effectuating § 504 of the Rehabilitation Act in programs and activities receiving USDA financial assistance); see also 7 C.F.R. § 272.6 (regulations governing discrimination by funding recipients in SNAP).  While

Plaintiffs correctly allege that USDA approved and funded DCF's D-SNAP,[4] USDA's actions in that regard do not constitute "issu[ance] [of] rules, regulations, or orders of general applicability," and were not taken as an exercise of its enforcement authority.  42 U.S.C. § 2000d-1; see Doar, 2013 WL 6057949 at *6.

In fact, Plaintiffs do not even seek the termination of funding in this case (the only relief expressly contemplated under the Rehabilitation Act) or any form of enforcement.[5]  Rather, the only specific relief Plaintiffs seek as to the Federal Defendants is an order enjoining the Federal Defendants "from approving any plan or waiver submitted to USDA by DCF that fails to ensure that reasonable accommodations are available to Plaintiffs and class members in a manner that allows them to apply for and comply with the conditions of eligibility for D-SNAP."  Complaint p.47 (Section "E" of the WHEREFORE clause).  Not only does this relief not trigger either express cause of action under the Rehabilitation Act (or, for that matter, under the APA), it seeks some sort of theoretical (it assumes DCF will submit a future plan) and amorphous (it does not define the "manner" of accommodation that would meet Plaintiffs' request) relief.  Plaintiffs fail to state an express cause of action against the Federal Defendants under the Rehabilitation Act.

---

[4] USDA approved and funded DCF's D-SNAP pursuant to the authority granted by § 402 of the Stafford Act, 42 U.S.C. § 5179, and § 5(h) of the Food and Nutrition Act of 2008, 7 U.S.C. § 2014(h).

[5] Plaintiffs failed to initiate an administrative enforcement action in this case.  7 C.F.R. § 15b.42, which adopts the procedures set forth in 7 C.F.R. § 15.6 (controlling Title VI), allows for administrative complaints to be filed with USDA by individuals alleging violations of the Rehabilitation Act in programs or activities receiving USDA funding.  Plaintiffs did not pursue this administrative complaint procedure.

**2. Congress Did Not Intend for a Claim Against a Federal Funding Agency Under the Rehabilitation Act, and the Court Should Not Imply the Same.**

Just as there is no express cause of action provided for under § 504 of the Rehabilitation Act, there is no implied cause of action to sue a federal funding agency under § 504 of the Rehabilitation Act.   In Cannon, the Supreme Court held that individuals injured by discriminatory practices in violation of Title IX have an implied right of action **against the recipients of federal funds**.   441 U.S. at 680, 687.[6]   In reaching this conclusion, the Court observed that permitting an implied remedy **against the funding agency** would run afoul of the structure and purposes of Title VI.   As explained by the Court, Congress enacted Title VI as a "compromise aimed at protecting individual rights without subjecting the Government to suits." Id. at 715 n.51 ("[a]lthough willing to extend private rights against discriminatory recipients, the Government may not have been anxious to encourage suits against itself").   Permitting suits against the funding agency, the Court reasoned, would be "far more disruptive" of the Government's enforcement efforts "than a private suit against the recipient of federal aid could ever be." Id. at 707 n.41.   Moreover, Cannon emphasized that no private right of action should be inferred from federal legislation absent a demonstration of approval from Congress.   See Touche Ross, 442 U.S. at 568 (discussing Cannon).

Since the Supreme Court issued Cannon in 1979, no circuit court has held that Congress intended to allow a private cause of action explicitly against a federal funding agency.   See, e.g., Cavazos, 906 F.2d at 749 ("Since the Supreme Court's decision in Cannon, a few circuits have considered the question whether the civil rights statutes . . . supply authorization for judicial

---

[6] "Title IX was patterned after Title VI of the Civil Rights Act of 1964." Cannon, 441 U.S. at 694.   Accordingly, the Supreme Court analyzed the creation of an implied right of action under Title IX and VI interchangeably.   Id. at 695-704.

supervision of the federal funding agency. None of these courts has resolved the issue in [the affirmative].").[7]  Cf. Montgomery, 645 F.2d at 292-93 (employing a pre-Cannon standard and failing to find congressional intent in vacating and remanding a decision finding no private cause of action against any defendant (local or federal) under Title VI).[8]  In fact, most courts post-Cannon have refused to imply a cause of action against a federal agency that approved and funded a program or activity allegedly operated in a discriminatory manner.  See, e.g., Glendening, 174 F.3d at 184, 191 (refusing to imply cause of action under Title VI); Marlow, 820 F.2d at 583 ("We do not believe that a private right of action by an individual complainant against a federal funding agency . . . can be implied under section 504."); NAACP v. Medical

---

[7] Cavazos expressly notes that Montgomery Improvement Association, Inc. v. United States Housing and Urban Development, 645 F.2d 291 (5th Cir. 1981) does not contradict this conclusion even though it was decided after Cannon because "the federal agency did not contest that the plaintiff had a right of action against it."  Cavazos, 906 F.2d at 749 n.8.  Accordingly, while the Fifth Circuit did vacate and remand the district court's order finding no implied cause of action against all the defendants (local and federal) under Title VI in Montgomery, the fact that the federal defendants in that case conceded a cause of action against them limits the breadth of the holding.  Moreover, Montgomery does not find congressional intent for a private cause of action at all—much less against the federal funding agency.  Rather, Montgomery, employing a pre-Cannon standard, merely found "nothing in the Act to suggest any congressional purpose to deny a private cause of action."  Montgomery, 645 F.2d at 297.  As explained by the dissent, Cannon modified this standard and "emphasize[d] that the court's primary focus should be on the **intent of Congress**," not whether there is explicit purpose to deny such cause of action, as previously allowed under Cort v. Ash, 422 U.S. 66, 82 (1975).  Id. (J. Hill, dissent) (emphasis added).

[8] While Montgomery is somewhat unclear, it should not be read to stand for the proposition that an implied cause of action is permitted against a federal funding agency under Title VI.  While Montgomery does hold that "plaintiffs have a private cause of action under . . . Title VI," it does not explicitly hold that the implied private cause of action sounds against the federal funding agency.  645 F.2d at 293, 297.  The district court dismissed all defendants, including the recipient of the funds.  Montgomery merely holds that there is a private cause of action, but does not explicitly define against whom.  The two principal cases relied upon in Montgomery, Cannon and Bossier Parish School Bd. v. Lemon, 370 F.2d 847 (11th Cir. 1967), expressly find a cause of action against only the recipient of federal funds, not the funding agency.  Id. at 295-96.  Montgomery does not cite to any case that holds that a private cause of action can be implied against the funding agency.

Ctr., Inc., 599 F.2d 1247, 1248 n.4, 1255 n.27, 1259 & n.49 (3d Cir. 1979) (refusing to imply cause of action under Title VI and Rehabilitation Act); see also Wilson v. United States Dep't of Educ., 159 F.3d 1349, at *2 (2d Cir. 1998) (Rehabilitation Act); Renteria, 92 F.3d 1197 (Title VI); Women's Equity Action League, 906 F.2d at 751 (Title VI); Doar, 2013 WL 6057949, at *10 ("this Court declines to find an implied []private right of action as against the federal defendants: the facts are too inconclusive, the public policy considerations too serious, and the law too *unclear*.") (emphasis in original).  As the Second Circuit observed in Marlow, "[s]uch an action would be inconsistent with the statutory scheme and the integrity of the Section 504 administrative process."  820 F.2d at 583 (internal citation and quotation omitted).

An examination of Glendening is instructive on this point.  In Glendening, a Neighborhood Association, which was affected by the construction of a new highway, sued the federal agency funding the highway (under various legal theories, including Title VI) alleging that the placement of the highway had "a disparate adverse impact on their African American community."  Glendening, 174 F.3d at 185.  "With regard to Title VI, the Neighborhood Association assert[ed] that the federal defendants . . . abdicated their duty under section 602 of that title to eliminate discrimination in federally-funded programs by terminating those funds," and attempted to bring a cause of action under Title VI to compel the same.  Id. at 191.  The Fourth Circuit rejected the plaintiff's attempt: it held that the Title VI does not provide an express or implied cause of action against a federal funding agency.  Id

As explained by the Fourth Circuit in Glendening, Title VI provides an administrative scheme that allows aggrieved individuals to petition the funding agency to secure compliance

13

with Title VI or to terminate funding.  Id. (citing 49 C.F.R. § 21.11(b)).[9]  Similar to the Second

Circuit in Marlow, the Fourth Circuit "[did] **not think Congress intended** [to allow] those same

individuals to circumvent that very administrative scheme through **direct litigation against**

**federal agencies**."  Id. (emphasis added).  Accordingly, the Fourth Circuit "conclude[d] that

Congress did not intend to include in Title VI the additional right of action . . . that the

Neighborhood Association requests of us" (i.e., an implied cause of action against a federal

funding agency for alleged violations in the funded program).  Id.

Similarly, in this case, the Rehabilitation Act, which is modeled after Title VI and

includes the same administrative provisions, does not provide Plaintiffs with an implied cause of

action.  By way of the Complaint, Plaintiffs appear to be attempting to bring an implied cause of

action under the Rehabilitation Act to compel enforcement (or future compliance).  As there is

no Congressional intent to allow such a cause of action under the Rehabilitation Act, the Court

should not imply the same.  See, e.g., Alexander, 532 U.S. at 286 (2001); Glendening, 174 F.3d

at 191; Marlow, 820 F.2d at 583; Love, 310 F.3d at 1351; Doar, 2013 WL 6057949 at *10.

### 3. Even if the Court Where to Imply a Cause of Action Under the Rehabilitation Act, Plaintiffs Fail to State a Claim.

While, as the Second Circuit recognized in Marlow, several courts implied a cause of

action explicitly against a federal funding agency before the Supreme Court issued Cannon in

1979, those cases do not alter the outcome of this case.  Marlow, 820 F.2d at 583 (citing Adams

v. Richardson, 480 F.2d 1159, 1162 (D.C.Cir.1973) (en banc, per curiam); Shannon v. U.S. Dep't

of Housing and Urban Dev., 436 F.2d 809, 817, 820 (3d Cir.1970); Gautreaux v. Romney, 448

---

[9] 49 C.F.R. § 21.11(b) applies to Department of Transportation claims.  7 C.F.R. § 15.6 is the corresponding regulation that applies to the USDA, and 7 C.F.R. § 15b.42 makes the administrative complaint procedures provided for in 7 C.F.R. § 15.6 applicable to the Rehabilitation Act.

F.2d 731, 740 (7th Cir.1971); Hardy v. Leonard, 377 F.Supp. 831 (N.D.Cal.1974)).   Even

assuming, arguendo, that this pre-Cannon law is still good and that the Court should look to this

non-controlling precedent, Plaintiffs fail to state a claim.

In Gautreaux, a case decided by the Seventh Circuit prior to Cannon, the Seventh Circuit

implied a cause of action against a federal funding agency under Title VI where the agency

continued to fund a housing project even though it was undisputed that the agency knew that the

project "perpetuated the racially discriminatory housing system in Chicago . . . ."  448 F.2d at

739.[10]  Accordingly, Gautreaux is understood to allow for an implied cause of action under the

Rehabilitation Act where a funding agency knowingly "acquiesced or actively participated in

discriminatory practices . . . ."  Marlow, 820 F.2d at 583 (citing Gautreaux, 448 F.2d at 740).

The Seventh Circuit, however, expressly limited the holding of Gautreaux to "these particular

facts" and cautioned that the "holding should not be construed as granting a broad license for

interference with . . . programs." Gautreaux, 448 F.2d at 740.

Gautreaux is distinguishable from this case.  Gautreaux dealt with an ongoing housing

project that the funding agency continued to fund even though it admittedly knew that the project

was being administered in a racially segregated manner.   Gautreaux, 448 F.2d at 737

(underscoring the fact that the funding agency continued to fund the housing program even

though it was conducted in a racially segregated manner because the funding agency believed "it

was better to fund a segregated housing system than to deny housing altogether to the thousands

of needy Negro families . . . .").  There is no corollary to these egregious facts in this case.

---

[10] Not only was Gautreaux decided before Cannon, Gautreaux fails to address—much less find—congressional intent prior to implying a cause of action.  Accordingly, Gautreaux is in violation of the Supreme Court's current mandate that "private rights of action to enforce federal law must be created by Congress" and "[s]tatutory intent . . . is determinative." Alexander, 532 U.S. at 286.

In this case, while Plaintiffs allege, in a conclusory fashion, that the Federal Defendants violated the Rehabilitation Act "by knowingly acquiescing in and approving DCF's D-SNAP plan," Plaintiffs fail to allege any facts in support of this conclusory allegation. Complaint ¶126. Rather, the opposite is true: Plaintiffs allege that USDA would only approve of DCF's plan after accommodations were added and that USDA required that DCF be able to execute the proposed accommodations. Complaint ¶¶43-49.[11] Plaintiffs' failure to support their conclusory allegations with facts requires dismissal. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain **sufficient factual matter**, accepted as true, to state a claim to relief that is plausible on its face.") (internal quotation and citation omitted and emphasis added); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions . . . .") (internal quotations and citations omitted).

Accordingly, even if this Court were to look at the pre-Cannon cases that implied a cause of action against a federal funding agency, Plaintiffs fail to state a claim. There is no express or implied cause of action against the Federal Defendants under § 504 of the Rehabilitation Act in this case. Count one of the Complaint should be dismissed.

---

[11] Plaintiffs appear to point to the Federal Defendants' repeated reminders to DCF that it must ensure reasonable accommodations are provided in support of Plaintiffs' assertion that (1) the DCF's D-SNAP was violative of the Rehabilitation Act on its face and (2) the Federal Defendants knew that it was in violation. Plaintiffs' reliance on these reminders is unavailing and not analogous to Gautreaux. DCF's D-SNAP was a one-time program, not a continuing program as in Gautreaux. Accordingly, unlike Gautreaux, in this case, there is no allegation—nor can there be—that the Federal Defendants knew of the alleged discriminatory practice based on the same program's prior alleged violations. The Federal Defendants required reasonable accommodations to DCF's one-time D-SNAP and approved of the plan only after accommodations were included. Complaint ¶¶43, 47, 49. Plaintiffs fail to allege knowing acquiesce in this case (nor could they).

**B.  Plaintiffs Fail to States a Claim Under the APA.**

In the fourth count, Plaintiffs appear to be attempting to bring two separate claims against the Federal Defendants under the APA.  Complaint ¶¶146-47.  First, Plaintiffs allege that the Federal Defendants' decision to approve DCF's D-SNAP plan was in violation of the APA in that Plaintiffs allege that the plan approved "on its face" violates the Rehabilitation Act.  Id. ¶¶47, 146.  Second, Plaintiffs allege that the Federal Defendants "have unlawfully withheld agency action to which the plaintiff class is entitled" in violation of the APA.  Id. ¶147. Plaintiffs fail to state a claim under either theory.

**1.  Plaintiffs' APA Claim is Precluded Because They Have an Adequate Remedy in Court.**

With respect to Plaintiffs' challenge seeking APA review of the Federal Defendants' decision to approve DCF's D-SNAP, Plaintiffs cannot state a claim as there is an adequate remedy available in court, and Plaintiffs' pleadings otherwise fail to state a claim.

First (and foremost), Plaintiffs' purported APA claim fails as the remedy that Plaintiffs seek—additional accommodations—is available through a direct suit against DCF.  Judicial review under the APA is restricted (in relevant part) to "final agency action for which there is no other adequate remedy in a court."  5 U.S.C. § 704; Glendening, 174 F.3d at 191; Marlow, 820 F.2d at 583 n.3.  In this case, Plaintiffs have an "adequate remedy in a court:" their suit against DCF for alleged violations of § 504 of the Rehabilitation Act and the ADA.

Generally, APA review of a claim against a federal funding agency is not available when the aggrieved individuals may bring a direct cause of action for discrimination against the funding recipient.  See, e.g., Turner v. Sec'y of the Dep't of Hous. and Urban Dev., 449 F.3d 536 540 (3d Cir. 2006) (holding that a private right of action under Fair Housing Act constitutes an

"adequate remedy" precluding an APA challenge); Glendening, 174 F.3d at 191-92 (holding that the APA does not provide a means to press Title VI claim against federal agency that approved and funded a project); Renteria v. Donahue, 92 F.3d 1197 (10th Cir. 1996) (Title VI); Wash. Legal Found. v. Alexander, 984 F.2d 483, 486 (D.C. Cir. 1993) (ruling that § 704 precluded APA review because plaintiffs had an implied right of action under Title VI against a federally funded education institution); Council of and for the Blind v. Regan, 709 F.2d 1521, 1531-33 (D.C. Cir. 1990) (en banc) (holding that the availability of a private right of action against entities receiving agency funds constitutes an adequate remedy barring an APA challenge).

Following this rule, circuit courts have held that a suit under the Rehabilitation Act against a recipient of federal funding constitutes an "adequate remedy" for purposes of the APA and precludes an APA claim against the federal funding agency. See, e.g., Sherman v. Black, 315 Fed. App'x 347, 349 (2d Cir. 2009); Garcia v. Vilsack, 563 F.3d 519, 524-25 (D.C. Cir. 2009); Marlow, 820 F.2d at 583 n.3. See also Glendening, 174 F.3d at 191 (reaching the same conclusion under Title VI). In Glendening, the Fourth Circuit concluded, "that Cannon's direct remedy against funding recipients is not only 'adequate,' but, as the Supreme Court recognized, is preferable to a direct suit against the agency itself." Id. at 191-92 (citing Cannon, 441 U.S. at 706–07 n.41). This authority establishes that Plaintiffs' direct discrimination claims against DCF preclude Plaintiffs' APA claim against the Federal Defendants.

Plaintiffs' APA claim otherwise fails to state a claim because it is predicated upon the erroneous assertion that a D-SNAP plan that provides reasonable accommodations at registration sites and allows for authorized representatives is "on its face" in violation of the Rehabilitation Act. See, e.g., Complaint ¶47. Where a plan proposes accommodations for persons with disabilities that set forth measures to give disabled persons an opportunity to participate, that

plan is not in violation of the Rehabilitation Act.  See, e.g., Alexander v. Choate, 469 U.S. 287, 304 (1985) ("Section 504 seeks to assure evenhanded treatment for handicapped individuals to participate in and benefit from programs receiving federal assistance."); Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1286 (11th Cir. 1997) ("[A] qualified individual with a disability is not entitled to the accommodation of her choice, but only to a reasonable accommodation.") (internal quotation and citation omitted); Redding v. Nova Southeastern University, Inc., 165 F. Supp. 3d 1274, 1299 (S.D. Fla. 2016) ("Section 504 requires only those accommodations that are necessary to ameliorate a disability's effect of preventing meaningful access to the benefits of, or participation in, the program at issue.").  As Plaintiffs' own pleadings establish that DCF's D-SNAP plan included reasonable accommodations on its face, approval of that plan cannot constitute a violation of the Rehabilitation Act or the APA.  Plaintiffs fail to state a claim.

### 2.  Plaintiffs Fail to Properly Plead a § 706(1) APA Claim.

As for Plaintiffs' APA claim predicated upon "agency action unlawfully withheld," Plaintiffs fail to state a claim as they fail to plead a discrete agency action that the Federal Defendants were required to take that they, nonetheless, withheld.  While § 706(1) of the APA allows Courts to "compel agency action unlawfully withheld," 5 U.S.C. § 706(1), "a claim under § 706(1)[, however,] can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*."  Norton v. S. Utah Wilderness All., 542 U.S. 55, 64 (2004) (emphasis in original); Jallali v. Sec'y, U.S. Dep't of Educ., 437 F. App'x 862, 864 (11th Cir. 2011).  Plaintiffs fail to allege a discrete agency action that the Federal Defendants are required to take in this case.  Rather, Plaintiffs merely allege, in a conclusory fashion, that the Federal Defendants "have unlawfully withheld agency action to which the plaintiff class is

entitled" without specifying what action was withheld.  Worse yet, Plaintiffs' own allegations establish that the Federal Defendants approved the one request for additional accommodations made by DCF and there is no allegation that DCF requested additional accommodations or that the Federal Defendants denied the same.  Complaint ¶53.

Accordingly it appears that Plaintiffs are attempting to bring a § 706(1) unlawfully withheld APA action predicated upon the generalized allegation that the Federal Defendants failed to ensure that DCF's D-SNAP, as administered by DCF, complied with the broad programmatic requirements of the Rehabilitation Act.  The APA does not allow for such a generalized claim under § 706(1).  "The limitation to discrete agency action precludes . . . broad programmatic attack[s]" and requires that the plaintiff "must direct its attack against some **particular** 'agency [in]action' that causes it harm." Norton, 542 U.S. at 64 (internal quotations omitted and emphasis added).  Plaintiffs have failed to meet this pleading requirement in this case.  Plaintiffs' § 706(1) APA claim fails.  The Federal Defendants should be dismissed from this case.

WHEREFORE, for the foregoing reasons, all claims against the Federal Defendants should be dismissed.

Respectfully submitted,

BENJAMIN G. GREENBERG
UNITED STATES ATTORNEY

s/Anthony Erickson-Pogorzelski
ANTHONY ERICKSON-POGORZELSKI
ASSISTANT U.S. ATTORNEY
99 N.E. 4th Street, 3rd Floor
Miami, Florida 33132
Tel: (305) 961-9296
Fax: (305) 530-7139
Fla. Bar 619884

Email: anthony.pogorzelski@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 16, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

s/Anthony Erickson-Pogorzelski
Assistant United States Attorney